IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER R.,[1]

       Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

       Defendant.

Civ. No. 3:18-cv-01149-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Heather R. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) finding that Plaintiff's mental impairments did not meet certain listings; (2) failing to credit Plaintiff's testimony; (3) failing to incorporate Dr. Molly McKenna's, Ph.D., recommendations; (4) failing to credit lay witness statements; (5) crafting Plaintiff's residual functional capacity ("RFC"). Pl.'s Br. 15–33, ECF No. 10. Because there is substantial evidence in the record to support the ALJ's findings and any errors are harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI on March 25, 2009, alleging disability since June 1, 2005. Tr. 21, 143–49. Her claim was denied initially and upon reconsideration. Tr. 21, 93–95. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Rudolph Murgo on August 6, 2010. Tr. 96, 828–75. ALJ Murgo denied Plaintiff's claim by a written decision dated September 3, 2010. Tr. 18–30. Plaintiff sought review from the Appeals Council and was denied on December 22, 2011, rendering the ALJ's decision final. Tr. 1–6.

Plaintiff sought judicial review in this Court in civil case number 3:12-cv-00342-MA. Pl.'s Br. 1. The Court affirmed the ALJ's decision on April 24, 2013. Tr. 599. Plaintiff appealed this Court's decision to the U.S. Court of Appeals for the Ninth Circuit, which remanded for additional proceedings. Tr. 600, 574–95. Plaintiff appeared before ALJ Murgo again on October 13, 2016 and August 24, 2017. Tr. 451–81, 432–50. ALJ Murgo denied Plaintiff's claim again by a written decision dated October 20, 2017. Tr. 406–31. The Appeals Council declined to assume jurisdiction on May 11, 2018, rendering the ALJ's decision on remand final. Tr. 399–405. Plaintiff now seeks judicial review of the ALJ's decision on remand.

Plaintiff was 18 years old at the time of her alleged disability onset and 31 at the time of her last hearing. *See* tr. 28, 143, 450. Plaintiff completed high school and has engaged in past relevant work as a cashier at a fast food restaurant, gas station attendant, and landscaper. Tr. 29, 421, 834, 838, 1185. Plaintiff alleges disability due to social phobia, fibromyalgia, and developmental, cognitive, and major depressive disorders. Pl.'s Br. 2.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's RFC, age, education, and work experience. 20

C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## I. Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred by finding that Plaintiff's mental impairments did not equal listings 12.04 for depressive, bipolar, and related disorders or listing 12.06 for anxiety and obsessive-compulsive disorders. Pl.'s Br. 15–25. These listings describe impairments that are severe enough to be *per se* disabling. *See Tackett*, 180 F.3d at 1099. The plaintiff has the burden of proving that her impairments meet all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If a claimant's impairment matches or is equivalent to a listed impairment, she is presumed unable to work and is awarded benefits without a determination of whether she can actually perform prior work or other work. *Id.* at 532. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan*, 493 U.S. at 532).

To meet listing 12.04 or 12.06, an individual must satisfy the listing's paragraph A and B or A and C criteria. 20 C.F.R. Part 404, Subpt. P., App. 1, §§ 12.04 and 12.06.[2] Plaintiff argues that her combined impairments equal paragraphs A and C of each 12.04 and 12.06. Pl.'s Br. 19. To meet either listing's paragraph C criteria, an individual's mental disorder must be "serious and persistent," meaning medically documented over a period of at least two years, and there must be evidence of:

---

[2] This Court reviews final agency decisions using the rules in effect at the time the agency issued the decision. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, n.1 (September 26, 2016). Because the ALJ's decision was issued on October 20, 2017, this Court reviews the ALJ's decision using the criteria that was in effect from August 22, 2017 to March 23, 2018. *See* tr. 422.

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

§§ 12.04(C) and 12.06(C). Here, the ALJ found that Plaintiff's mental impairments do not meet the paragraph C criteria because the medical evidence in the record does not indicate "marginal adjustment." Tr. 414; *see* §§ 12.04(C)(2) and 12.06(C)(2). The ALJ also found that Dr. Nancy M. Tarrand's, M.D., opinion that Plaintiff's impairments equaled the paragraph C criteria was inconsistent with Plaintiff's ability to live outside a highly structured setting, apply for a job, and interact appropriately with consultative examiners and investigators. Tr. 420; *see* tr. 1338–40.

Dr. Tarrand testified that Plaintiff's combined impairments equaled the paragraph C criteria and she would likely decompensate in a competitive work environment or lose her job for making mistakes in judgment. Tr. 439, 442–43. "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* Dr. Tarrand's opinion is contradicted by that of interviewing physician Dr. Kim Goodale, Psy.D. *See* tr. 1182–90. Dr. Goodale opined that Plaintiff had some paragraph A traits, worked best in very small social environments or independently with limited contact with others, and could perform most sedentary to light tasks with pacing. *Id.* Therefore, the ALJ needed to provide specific and

legitimate reasons supported by substantial evidence to properly reject Dr. Tarrand's opinion. *See Bayliss*, 427 F.3d at 1216 (citation omitted). The ALJ did so here.

An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6).

Dr. Tarrand never examined or treated Plaintiff, though she specialized in clinical psychology. *See* tr. 434, 1190. Regarding consistency, Plaintiff's ability to live outside a highly structured setting does not contradict Dr. Tarrand's opinion. The "highly structured setting(s)" criteria is one of four paragraph C(1) factors and does not have to be met. *See* §§ 12.04(C)(1) and 12.06(C)(1) (requiring that Plaintiff relied, on an ongoing basis, on "medical treatment, mental health therapy, psychosocial support(s), *or* a highly structured setting(s), to diminish the symptoms and signs of [her] mental disorder" (emphasis added)). Plaintiff's ability to apply for a job and interact appropriately with others pertains to paragraph B and has no bearing on Dr. Tarrand's opinion regarding paragraph C. Plaintiff does not, however, dispute the ALJ's finding that Plaintiff fails to meet paragraph C's "marginal adjustment" criteria. Indeed, Dr. Tarrand found that Plaintif has a moderate ability to adapt or manage herself. Tr. 438–39.

Plaintiff argues that Dr. Tarrand opined that Plaintiff's combined impairments equaled listings 12.04(A) and (C) and 12.06(A) and (C). Pl.'s Br. 17, 19; *see* tr. 439. Plaintiff does not argue that a single impairment met or equaled a listing or that her combined impairments met a

listing. *Id.* The evidence the ALJ cited, however, shows that the record as a whole indicates a higher level of functioning than Dr. Tarrand suggested. *See* tr. 414, 420. Plaintiff also argues that Dr. Tarrand is the only medical professional of record who considered the revised regulatory criteria. Pl.'s Br. 19. It is unclear which criteria Dr. Tarrand considered, but she testified that Plaintiff met the paragraph C criteria because Plaintiff was "at high risk for decompensating in a regular kind of work environment." *See* tr. 442. Only the old regulations refer to decompensation. *Compare* § 12.04(C)(1)–(2) (effective September 29, 2016 to January 16, 2017) *with* § 12.04(C) (effective August 22, 2017 to March 13, 2018). Regardless, Plaintiff fails to point to any significant differences between the old and new criteria. Finally, Plaintiff argues that the ALJ's reliance on the state agency consultants' opinions was misplaced because they did not review the evidence in the record after 2009 and used the old criteria. Pl.'s Br. 16, 19–20 (citing tr. 289–309, 420–21). Again, Plaintiff fails to point to any significant differences between the regulations and cites no substantial evidence from after 2009.

The ALJ reasonably concluded that Plaintiff's mental impairments did not meet or equal listings 12.04 and 12.06.

## II. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). When there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair,* 885 F.2d at 603). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 416. In August 2010, Plaintiff testified that she took her daughter to the Rose Garden and the zoo, cooked, and drew pictures. Tr. 840, 847. She dressed herself, shopped, did laundry, and vacuumed. Tr. 847–48. She helped her daughter get ready for school, made breakfast, and usually rested due to stomach pain. Tr. 849. Then she took her daughter to the bus stop, went back to sleep, and did chores. *Id.* She took care of her cats, turtle, crickets, and frogs. Tr. 841. She played video games (though she had to restart when interrupted), watched videos, and tried to read but could not focus. *Id.* 861–62.

Plaintiff lost custody of her daughter for one year but regained it. Tr. 856. She took Prozac during that time. *Id.* As of her hearing, she only took codeine with acetaminophen for fibromyalgia and a sleep aid as needed. Tr. 843, 847, 852. She had random pain, mostly in her shoulders, neck, and back, including during her testimony. Tr. 853, 847. Most of the time her pain was five or six out of 10 but reached eight, nine, or 10 other times. *Id.* Her pain lasted for two days to one week and affected her functioning three to six days per month on average. Tr. 853–54. Sometimes she got lightheaded and her legs hurt. Tr. 846. She had appetite problems and nausea. Tr. 847. Her pain increased with hot and cold weather. Tr. 858. Heat caused her migraines and fatigue. *Id.* Fatigue could be a significant part of what prevented her from working. Tr. 858–59. She lost her gas station job for accidentally selling alcohol to a minor. Tr. 838. She also lost her fast food job because she did not get along with her coworkers. Tr. 859–60. She did not talk to others much at work because she wanted to do a good job. Tr. 860. She sometimes had difficulty being around others and got nervous, anxious, and overwhelmed in

certain settings, such as on the bus and in stores. Tr. 854–55. Sometimes she went to the store and left without buying anything. Tr. 855. She had a hard time talking to people about most subjects. Tr. 857. She went to therapy, which made her feel more positive. Tr. 844, 861.

In October 2016, Plaintiff testified that she had been married for one year and homeschooled her daughter. Tr. 457–58. Plaintiff had been volunteering at a museum for more than one year. Tr. 462–63. She volunteered two days per week for four to six hours per day. Tr. 462–63, 469, 471–72. She used to volunteer at a grade school. Tr. 465. She took aspirin but no other medications. Tr. 465. She had not been to the doctor many times in the last four years, only saw a chiropractor, and stopped going to counseling because her counselor said she could not benefit from it. Tr. 465–66. She could walk for five minutes and sit in a chair for 30 minutes. Tr. 466–67. Sometimes she had to sit down at the museum because of her fibromyalgia pain. Tr. 472. She did some household chores, but her husband cooked, shopped, did laundry, and helped teach her daughter. Tr. 469. She made friends with her neighbor and people at the museum but had a hard time maintaining friendships because of her fatigue. Tr. 467, 475. She became overwhelmed around large groups of people and when asked to do something she was unable to do and broke down or became overwhelmed and angry. Tr. 474, 478–49.

The ALJ found that the medical evidence in the record showed a much greater level of mental functionality than Plaintiff alleged. Tr. 416. For example, Plaintiff cared for her daughter. Tr. 416 (citing tr. 1011); *see also* tr. 469. She repeatedly rejected medication and counseling and failed to cooperate with treatment, showing little interest unless she wanted something. Tr. 416–17 (citing tr. 234–44, 246–60, 282–88, 330–98, 984–1032, 1036, 1047, 1060, 1152, 1199, 1206, 1292, 1318, 1322). In August 2004, she said her therapy goal was to regain custody of her

daughter. Tr. 234. In August 2009, she said past counseling had not helped but she was seeking treatment to work on her relationships and gain documentation for her disability claim. Tr. 989. One physician described her as "not willing to do any thing [sic] to get better." Tr. 1322. "[The Ninth Circuit has] long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.)) (internal quotation marks omitted). Here, Plaintiff points to no legitimate reason for failing to follow the recommended course of treatment. *See* tr. 246 (reporting that she did not want to continue taking Prozac after having taken it for two months), 285–86 (reporting that she had "emotional flattening" with Prozac), 1199 (reporting that she was not taking her antidepressant because she did not want to and considered her mood stable). Additionally, Plaintiff's roommate said Plaintiff saw no reason to want to work. Tr. 189.

Plaintiff argues that, according to Dr. Tarrand, Plaintiff's mental impairments contribute to her difficulties with medication and therapy. Pl.'s Br. 23–24 (citing tr. 436). Dr. Tarrand testified that Plaintiff's odd behavior and beliefs would affect her in the workplace, not that they would limit her ability to follow a prescribed course of treatment. *See* tr. 436. Moreover, Plaintiff attended therapy sessions, took medication, and completed a drug treatment program when she wanted to regain custody of her daughter. Tr. 234, 246. This demonstrates that she is capable of following a treatment plan. Plaintiff also argues that the ALJ failed to consider the medications' side effects and Plaintiff's belief that they were ineffective. Pl.'s Br. 24. Yet Plaintiff reported improvement with Cymbalta and denied side effects. Tr. 1369, 1375. Likewise, she only took Prozac for two months and reported "emotional flattening." Tr. 285–86.

The ALJ found significant inconsistencies between Plaintiff's testimony and the Cooperative Disability Investigations Unit investigation in December 2016. Tr. 417. A witness said that Plaintiff was friendly, polite, and able to get along with others. Tr. 417 (citing tr. 1338). The witness never noticed Plaintiff having any issues getting around or heard her mention any health problems and said that she appeared healthy. *Id.* The investigator said that Plaintiff was not fatigued after climbing the 26 stairs to her apartment and answered questions for half an hour while standing without complaining of fatigue or other issues. Tr. 417 (citing tr. 1338–39). Plaintiff maintained focus and smiled appropriately more than once. *Id.* The investigator noted no odd behaviors, anxiety, or depression. Tr. 417 (citing tr. 1339). Plaintiff stated on her disability application that she quit her gas station job due to her condition but told the investigator she got bored and did not like it. Tr. 417; *see* tr. 838, 1340. Yet she testified that she lost her gas station job because she accidentally sold alcohol to a minor. Tr. 838. She also testified that she lost her fast food job because she did not get a long with her coworkers but told the investigator she could no longer work there because it closed. Tr. 859–60, 1339–40. Additionally, Plaintiff applied for a job at the Dollar Tree. Tr. 417 (citing tr. 1340).

The ALJ also found that Plaintiff's daily activities were inconsistent with Plaintiff's allegations of disabling symptoms and limitations. Tr. 417. A claimant's daily activities may be grounds for an adverse credibility finding if she "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Here, the ALJ found that Plaintiff took public transportation and did chores (including laundry, cleaning counters, doing dishes, vacuuming, watering plants, yardwork, and caring for her pets and daughter). Tr. 417 (citing tr. 1186, 1369). She was married, homeschooled her daughter, and volunteered two days per week. Tr. 417 (citing tr. 457–58, 462–63). In March 2015, she said she was unable to work because she had other responsibilities, such as childcare, pet care, and household chores. Tr. 417 (citing tr. 1199). In November 2014, she said she was unable to work due to her tiredness and need to care for her daughter. Tr. 417 (citing tr. 1203).

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility.

### III. Dr. McKenna's Medical Opinion

Plaintiff argues that the ALJ improperly failed to incorporate Dr. Molly McKenna's, Ph.D., recommendation that Plaintiff needed various vocational accommodations. Pl.'s Br. 25–27; *see* tr. 269, 981. Plaintiff argues that Dr. McKenna's opinion demonstrates that Plaintiff requires accommodation to work and is, therefore, disabled. Pl.'s Br. 27 (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) (explaining that, when determining whether an individual is disabled, the agency does not consider the possibility of "reasonable accommodation.")). On appeal, the Ninth Circuit held that the RFC adequately incorporated Dr. McKenna's opinion despite Dr. McKenna's treatment recommendations. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015). The Ninth Circuit explained that Dr. McKenna's formal conclusions appeared in a separate section of her report and "[a]n ALJ may

rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations." *Id.* (citing *Carmickle*, 533 F.3d at 1165). The ALJ properly did so here.

## IV. Lay Witness Statements

Plaintiff argues that the ALJ failed to discuss eight lay witness statements. Pl.'s Br. 27–29. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members." (citation omitted)). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Here, the ALJ found that Plaintiff's roommate's—Gavin L.'s—statements were generally consistent with Plaintiff's statements but did not alter the RFC. Tr. 416. The ALJ did not discuss any other lay witness statements. The Ninth Circuit upheld the ALJ's previous findings regarding lay witness testimony. *Rounds*, 807 F.3d at 1007. The Ninth Circuit held that the ALJ's failure to consider Oregon State employee Gary Davidson's statement was harmless because he was an a-typical lay witness, his comments were conclusory, and his testimony regarding Plaintiff's memory problems was accounted for because the RFC limited Plaintiff to one- to two-step tasks.

*Id.* The Ninth Circuit did not instruct the ALJ to reweigh or evaluate additional lay witness testimony on remand. *See id.*

The ALJ's failure to consider the remaining lay witness testimony is, as above, harmless error. The lay witnesses did not describe any limitations that Plaintiff had not already alleged. *Compare* tr. 910–17, 938–39, 940–41, 951–54, 960–63 *with* tr. 445–80, 837–62. The ALJ's reasons for discounting Plaintiff's testimony, therefore, "apply equally well to the lay witness testimony," *Molina*, 674 F.3d at 1117; *see also id.* at 1122 (finding that an ALJ's failure to provide germane reasons to reject lay witness testimony is harmless error when the rejected testimony describes the same or less extensive limitations as properly discredited Plaintiff testimony.). The error was harmless.

## V. The ALJ's RFC Finding

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's moderate limitations in concentration, persistence, and pace in determining the RFC. Pl.'s Br. 29–33. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). Here, the ALJ found that Plaintiff had the RFC to perform medium work but

was "limited to simple routine tasks [] consistent with work at the SVP 2 level with GED levels not to exceed 2/2/2" and could have no public contact, only occasional superficial coworker contact, and no teamwork. Tr. 414. The ALJ gave great weight to state agency psychological consultant Joshua Boyd's, PsyD, opinion. Tr. 421. Dr. Boyd found that Plaintiff had moderate limitations in concentration, persistence, and pace but concluded that she would not be significantly limited when performing simple tasks. Tr. 299, 305.

The ALJ's RFC finding is supported by substantial evidence in the record.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this _21st_ day of November, 2019.

                                      s/ Michael J. McShane
                                      Michael J. McShane
                                      United States District Judge